# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **OLIVIA HENDRICKS COMER,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-01-N-1123-E |
| **CITY OF BIRMINGHAM, et al.,** | ] |
| Defendant(s). | ] |

### Memorandum of Opinion

### I. Introduction

The court has for consideration the motion of the defendant, City of Birmingham, for summary judgment, filed February 28, 2002. (Doc. # 19). The City contends that summary judgment is due in its favor on the claims alleged against it by the plaintiff, Olivia Hendricks Comer. Ms. Comer is proceeding *pro se* in this action, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, on behalf of her son Joel F. Comer, who was shot and killed by members of the Birmingham Police Department on May 10, 1999. Ms. Comer has received notice of the obligations that befall her on a motion for summary judgment (Doc. # 26), and has made several assertions in support of her claim. However, upon due consideration the court finds the City's motion for summary judgment due to be granted.



## II.     Background

The facts underlying this dispute are as follows.[1] On May 10, 1999, at approximately 9:23 p.m., four City police officers[2] responded to a dispatch signal person with a gun. Upon arriving at the scene, one of the officers observed the suspect and radioed dispatch the direction in which the suspect was moving. Additional patrol units responded to the scene, and a chase ultimately ensued. Matters intensified when Officer Paul Irwin of Unit 350 was told by a witness that a person with a gun had entered his apartment. When Officer Irwin proceeded to investigate, he observed a black male exit from the rear of the apartment. Officer Irwin began to give chase when the suspect fired two shots at him. Officer Irwin returned fire, and possibly wounded the suspect, as he began limping after the exchange.

The chase resumed – with Sergeant Mike Walker and Officer Maurice Parnell now a part of the pursuit – and proceeded up a flight of stairs until the suspect turned and fired shots at his pursuers. Officers Irwin and Parnell returned fire. The suspect fled the stairs and ran east behind an apartment building. As he approached the end of the building, he again fired shots at the officers in pursuit. Sergeant Walker and Officers Irwin and Parnell returned fire. The suspect ran south down a flight of stairs to an apartment, where he stopped and called for someone to let him in. Police surrounded him and ordered him to drop his weapon. The suspect stepped off the porch of the apartment and faced the

---

[1] This recitation of facts is drawn from the Statement of Facts included in the City's Initial Submission to this court. (Doc. # 20). Facts that have been placed in dispute by the plaintiff are discussed when appropriate.

[2] The officers were William Hovies and William Stanford in Unit 325 and John Sands and Richard Wright in Unit 328.

officers. He did not, however, drop his weapon. Officers Hovies and Irwin then fired their weapons at the suspect, striking him several times and causing him to collapse. Paramedics were called to the scene and arrived at approximately 9:37 p.m. The suspect, identified as Joel Comer, was pronounced dead at 9:39 p.m.

Members of the Birmingham Police Department's Internal Affairs Division and detectives from the Homicide Division collectively visited approximately 150 apartments in the area of the shootings in an effort to locate witnesses. Investigative personnel collected witness statements, officers' accounts of the incident, a preliminary Medical Examiner's report, and physical evidence. This information was subsequently presented to the District Attorney's office. That office ruled the shooting of Joel Comer justifiable.

Ms. Comer makes several assertions in opposition to the City's statement of facts. In sum, however, she contends that her son did not fire a gun at police officers, and that based upon the evidence, it is clear that the police shot and killed the wrong man. In support of this theory, she proffers a signed affidavit from Abraham L. Woods, Jr., in which Mr. Woods claims a personal investigation conducted by himself revealed no person who would corroborate the City's assertion that Mr. Comer fired a gun at the police officers. The affidavit has not been notarized. (Doc. # 31, Ex. 1). Ms. Comer also proffers a page from what presumably is the coroner's report on the examination of Mr. Comer's body. Among the observations mentioned in the report is the following: "Examination of the hands similarly does not reveal the presence of gunpowder tattoos, powder particles, sooty deposits, or other injuries." (*Id.*, Ex. 2). Two other exhibits purport to list the evidence taken from Mr. Comer's person by the coroner at the scene and during the examination of

3

the body. (*Id.*, Ex. 3, 4). Neither list mentions a gun. A final exhibit is apparently the coroner's illustrative report of his examination of Mr. Comer's body. The report details nine separate gun shot wounds. Ms. Comer contends that the illustration reveals that her son was shot in the back. For the record, the court notes that the report appears to illustrate two gun shot wounds on Mr. Comer's back side. The first is a gun shot exit wound on his left forearm. The second is apparently a gun shot entry wound at the apex of his left buttock. (*Id.*, Ex. 5).

Two additional affidavits (as well as a third by Ms. Comer herself) are also before the court. The first, signed by Annette Little, avers that statements from eye witnesses corroborate Ms. Comer's contention that her son did not have a gun. The affidavit is not notarized and goes into no further detail beyond the substance just relayed. (Doc. # 28, Ex. 2). Similarly, an affidavit signed by Cora Hubbard states that she attended a conference with Ms. Comer on June 14, 1999, at the Birmingham Police Department. During that conference, the department apparently produced no evidence or witnesses "proving Joel Comer fired a gun at the police or anyone." This affidavit is not notarized. (*Id.*, Ex. 3). Ms. Comer states in her affidavit that she conducted an investigation and discovered no person to corroborate the department's story that Mr. Comer fired shots. Moreover, she states that "Attorney Peter Davis has the lists of witnesses he interviewed. He would not turn over the files to me." (*Id.*, Ex. 4). Ms. Comer also draws support from a newspaper article, 911 tapes, and the conference referenced in Ms. Hubbard's affidavit. None of this information, however, is presently before the court in any form.

### III.    Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer*, *supra*. However, even while this court views "factual inferences favorably toward the nonmoving party and [provides] pro se complaints . . . a liberal interpretation . . ., a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

**IV.   Discussion**

As an initial matter, the court briefly addresses the contents of Ms. Comer's amended complaint. (Doc. # 16). In this filing, Ms. Comer states that she is "challenging the 'cause of death' statement written on Joel Fitzgerald Comer's Death Certificate." She then apparently attempts to state "claims" against the following persons: Jefferson County Chief

Deputy Coroner Jay Glass, Jefferson County Chief Coroner/Medical Examiner Robert M. Brissie, District Attorney David Barber, and Deputy Coroner Ronnie Williams. She alleges that Mr. Glass "gave a fraudulent statement in support of the police who shot my son . . . . The statement can be found in The Birmingham News." She alleges that Mr. Brissie stated a cause of death on Mr. Comer's death certificate that was in opposition to his findings. She alleges that District Attorney Barber declared the death of her son justifiable homicide "without even considering the autopsy report."[3] Finally, she alleges that Mr. Williams hindered her efforts to learn more about her son's death by sending her "on a wild goose chase" in search of the clothing Mr. Comer was wearing on the night of his death.

Since the court permitted this amendment, Ms. Comer has not submitted any evidence in support of these claims. The evidence she has submitted relates only to her claim that her son's civil rights were violated when he was shot and killed by members of the City police department. The court must therefore find that Ms. Comer has abandoned the claims against these individuals she purportedly set forth in her amended complaint.

The court must also find that Ms. Comer's claim against the City cannot survive summary judgment. As the City correctly notes, municipal liability is limited under § 1983 to situations where constitutional deprivations result from the application of city custom or policy. Respondeat superior is not a basis for liability. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." (quoting *City of Canton*

---

[3] As far as the court can discern, this alleged statement appeared in a newspaper article.

*v. Harris*, 489 U.S. 378, 385 (1989) (quotations omitted))). Ms. Comer has come forward with no evidence tending to establish that the City has a custom or practice of using deadly force in unwarranted settings; or that the City is deliberately indifferent to its police officers use of deadly force (and that indifference can be said to be akin to a custom or practice); or that the City is deliberately indifferent to the constitutional rights of the people of Birmingham, as evidenced by its inadequate training and/or supervision of the police officers in its employ. *Cf. Gold v. City of Miami, supra*. Indeed, Ms. Comer has not even challenged the City on this point.

The court gathers from its review of Ms. Comer's submissions a desire on her part for the court to assume the additional role of counsel to her in the prosecution of this action. The court, of course, cannot lend such assistance. The court can say, however, that the allegations and documents before it raise questions as to whether Mr. Comer carried and/or discharged a firearm at police officers on the night of his shooting. The court can also say that evidence tending to show that he neither carried nor discharged a firearm on the night of his shooting might well provide the basis for a claim against the individual police officers involved. Those individuals are not parties to this action, however, and should Ms. Comer wish to consider bringing such an action at a later time, she would be wise to consider obtaining legal assistance.

### V.    Conclusion

For the reasons set forth in the body of this memorandum, the City's motion for summary judgment is due to be and is hereby **GRANTED**. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this \_\_\_18th\_\_\_ of June, 2002.

                                             _____
                                             EDWIN L. NELSON
                                             UNITED STATES DISTRICT JUDGE